# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**DEREK HUNT**                                                                         **PLAINTIFF**

**v.**                                              CASE NO. __1:21cv101-MPM-RP__

**MISSISSIPPI STATE UNIVERSITY**                                         **DEFENDANT**

## COMPLAINT

After two decades working for Defendant Mississippi State University (MSU), Plaintiff Derek Hunt (Mr. Hunt) needed to take time off to care for his disabled mother. When Mr. Hunt informed MSU about this situation, MSU did not notify Mr. Hunt about his rights under the Family and Medical Leave Act. After Mr. Hunt took approved, accrued leave to fulfill his caretaking duties, MSU forced him to resign. When Mr. Hunt applied for further jobs with MSU, he was repeatedly denied. For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

### JURISDICTION, VENUE, AND JURY DEMAND

1. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law.

2. Venue is proper in this court under 28 U.S.C. § 1391 because Defendant and all work at issue were located in and around Oktibbeha County, Mississippi.

3. Plaintiff demands a trial by jury on all issues so triable.

### PARTIES

4. MSU is a land-grant university based in Starkville, Mississippi.

1

5. On information and belief, MSU receives funding from the United States federal government and so is subject to Section 504 of the Rehabilitation Act of 1973 (Rehab Act).

6. Mr. Hunt is an adult resident of Mississippi and a former "eligible employee" of MSU as defined by the Family and Medical Leave Act of 1993 (FMLA) and its implementing regulations.

## FACTS

7. Mr. Hunt began work for MSU on or around August 25, 1997 as a Painter I.

8. Throughout his career with MSU, Mr. Hunt worked in the Physical Plant Administration department.

9. As of June 18, 2019, Mr. Hunt was working as a Building Services Tech II.

10. In 2014, Mr. Hunt's mother began to suffer from Charcot-Marie-Tooth disorder, a degenerative nerve disease.

11. To help take care of his mother, Mr. Hunt needed to be absent from work starting in 2015.

12. Mr. Hunt's supervisor, Wayne Nickles (Mr. Nickles), knew about his mother's health condition and his need to care for her.

13. At no time did Mr. Nickles or any other agent of MSU inform or notify Mr. Hunt that he was entitled to FMLA leave to care for his mother.

14. To care for his mother, Mr. Hunt used his approved, accrued leave.

15. Each time Mr. Hunt needed to use his accrued leave, he followed MSU's policies and procedures.

16. Mr. Hunt even worked an alternative schedule to compensate for the accrued leave he had taken to care for his mother.

17. From 2015 to June 18, 2019, Mr. Hunt repeatedly took approved, accrued leave to care for his mother.

18. From 2015 to June 18, 2019, MSU never informed Mr. Hunt that there was a problem with his taking accrued leave to care for his mother.

19. On June 18, 2019, Tommy Verdell, Jr., (Mr. Verdell), the Director of Facilities Management, called Mr. Hunt in for a meeting.

20. In this meeting, Mr. Verdell gave Mr. Hunt a termination letter. Exhibit 1.

21. This termination letter does not state any reason for Mr. Hunt's termination. *Id.*

22. However, verbally, Mr. Verdell told Mr. Hunt that he was being terminated for missing too much work.

23. Mr. Hunt then explained that he had leave each time he needed to be off work.

24. Mr. Verdell did not dispute this point but instead referred to Mr. Hunt having been suspended for absence in 2015--four years earlier.

25. As originally written, Mr. Verdell's letter listed Mr. Hunt's name incorrectly.

26. Mr. Hunt informed MSU of this error.

27. In response, on June 24, 2019, Leslie M. Corey (Ms. Corey), a senior human resources generalist for MSU, told Mr. Hunt that MSU was ending his employment "[b]ecause of a continued violation of the departmental/university time and attendance policy over a number of years." Exhibit 2 at p. 3.

28. Up to this time, Mr. Hunt had received no discipline concerning any supposed violation of the "departmental/university time and attendance policy."

29. Ms. Corey also stated that MSU would allow Mr. Hunt to resign in lieu of termination. *Id.*

3

30. Ms. Corey alleged that resignation would allow Mr. Hunt to apply for other jobs with MSU in the future. *Id.*

31. In response to this ultimatum, Mr. Hunt resigned.

32. On June 27, 2019, Mr. Hunt emailed Ms. Corey concerning his separation from MSU. Exhibit 3 at p. 3.

33. Mr. Hunt informed Ms. Corey that one of his coworkers in the heavy equipment crew was being treated more favorably than Mr. Hunt. *Id.*

34. Mr. Hunt informed Ms. Corey that Doug Dumas (Mr. Dumas) had had the same attendance problems of which MSU had accused Mr. Hunt. *Id.*

35. However, unlike Mr. Hunt, Mr. Dumas confronted his management, "threw his keys on the desk an [sic] said he quit, an [sic] walked out." *Id.*

36. Nevertheless, Mr. Dumas was back to work for MSU after just two weeks. *Id.*

37. Hoping to be given the same treatment, Mr. Hunt asked if he could reapply for his job. *Id.* at p. 2.

38. Ms. Corey informed Mr. Hunt that he could not reapply for his job because it was "posted for internal applicants." *Id.*

39. Over the next few weeks, Mr. Hunt applied for several jobs at MSU.

40. Despite his years of quality service to MSU, Mr. Hunt was not given an interview for any of these positions.

41. Despite MSU's shifting explanations for these problems, MSU truly terminated and refused to rehire Mr. Hunt because of his need to care for his disabled mother.

## CAUSES OF ACTION

### COUNT I: FMLA - INTERFERENCE

42. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

43. Per 29 C.F.R. § 825.300(e), "[f]ailure to follow [FMLA notice requirements] may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."

44. Here, MSU failed to follow FMLA notice requirements by failing to notify Mr. Hunt of his FMLA rights and its FMLA obligations when he informed MSU that he needed leave to care for his mother.

45. In doing so, MSU violated the FMLA and harmed Mr. Hunt.

### COUNT II: REHAB ACT - DISCRIMINATION - TERMINATION

46. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

47. Per Section 504 of the Rehab Act, an employer is prohibited from taking any adverse employment action against an employee because of that employee's association with a disabled individual.

48. Here, MSU terminated Mr. Hunt because of his association with his mother, a disabled individual.

49. In doing so, MSU violated the Rehab Act and harmed Mr. Hunt.

### COUNT III: REHAB ACT - DISCRIMINATION - FAILURE TO HIRE

50. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

51. Per Section 504 of the Rehab Act, an employer is prohibited from taking any adverse employment action against an employee because of that employee's association with a disabled individual.

52. Here, MSU refused to hire Mr. Hunt because of his association with his mother, a disabled individual.

53. In doing so, MSU violated the Rehab Act and harmed Mr. Hunt.

## REMEDIES

54. Plaintiff seeks all remedies available, including but not limited to the following:

    a. Back pay;

    b. Reinstatement and/or front pay, as appropriate;

    c. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

    d. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

    e. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

    f. Pre- and post-judgment interest;

    g. Attorney fees;

    h. Costs;

    i. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

    j. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

k. Any other equitable relief as this honorable Court deems appropriate.

l. A final judgment declaring that Defendant's treatment of Plaintiff was unlawful; and,

m. Any other relief available under any applicable principle of law or equity.

Respectfully submitted on June 18, 2021,

                                         */s/ Jay Kucia*
                                         Jay Kucia (MSB No. 106123)
                                         JOEL F. DILLARD, P.A.
                                         775 North Congress Street
                                         Jackson, Mississippi 39202
                                         (601) 509-1372, ext. 1
                                         jay@joeldillard.com

OF COUNSEL:     */s/ Joel Dillard*
                                         Joel Dillard (MSB No. 104202)
                                         JOEL F. DILLARD, P.A.
                                         775 North Congress Street
                                         Jackson, Mississippi 39202
                                         (601) 509-1372, ext. 2
                                         joel@joeldillard.com